143 So.2d 684 (1962)
BERWICK CORP., a Florida Corporation, Appellant,
v.
KLEINGINNA INVESTMENT CORP., a Florida Corporation, Appellee.
No. 61-634.
District Court of Appeal of Florida. Third District.
July 31, 1962.
Rehearing Denied September 5, 1962.
*685 Williams, Salomon, Kenney & Lindson, Miami, for appellant.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and HORTON and BARKDULL, JJ.
PEARSON, TILLMAN, Chief Judge.
The Berwick Corporation was the landlord of the Kleinginna Investment Corporation by virtue of a written lease upon an ocean front motel. The tenant brought an action in the circuit court to recover a security deposit required by the lease and for damages, claiming a constructive eviction. It was alleged that the defendant-landlord violated its covenant to keep the roof in good repair. After a non-jury trial, the court entered judgment for the plaintiff for the amount of the security deposit less certain charges, but denied plaintiff's claim for damages. The defendant-landlord appeals the judgment for the security deposit, and the plaintiff-tenant cross assigns as error the denial of the additional damages sought for the alleged violation of the lease. We affirm.
As stated, the tenant sought the return of the security deposit alleging a constructive eviction because of conditions arising *686 from the landlord's failure to perform the following covenant in the lease:
"The lessor covenants and agrees with the lessee that the lessor will keep the roof of the building or buildings hereby demised sound and watertight."
In a separate count, the tenant sought damages growing out of the same claimed violation. These damages were alleged to be the loss of its improvements to the premises, the loss of profits during the portion of the lease used because of the large number of rooms unfit for occupancy, and the necessity to reduce rates for those that were habitable.
Defendant's answer denied the constructive eviction and claimed abandonment and default.
After trial, the trial judge made the following findings:
"1. That defendant-lessor breached the contract of the lease providing that lessor would keep the roof of the demised building sound and watertight.
"2. That by reason of such failure on the part of the lessor to perform the above covenant, the roof leaked intermittently from March of 1957 to January 1, 1958, and during such times water came into the hall ways and corridors, cocktail lounge and lobby and a substantial number of rooms, causing damage to walls, plaster and paint. Rugs in the hall ways and corridors and in certain rooms were wet and waterstained and a damp and musty odor permeated the building.
"3. That by reason of the failure of the lessor to keep the roof sound and watertight, the leased premises, in substantial part were rendered untenantable and unsuitable for the purpose for which they were leased.
"4. That on January 2, 1958, plaintiff-lessee closed the doors and erected a sign thereon with the legend `Closed  water damage' and vacated the premises.
"5. That on January 3, 1958, defendant-lessor removed the sign and commenced operation of the hotel for its own account.
"6. That the Court concludes that plaintiff is entitled to a refund of the security deposit of $75,000.00.
"7. That the evidence is insufficient to support a finding in favor of plaintiff with respect to loss of profits.
"8. That the evidence is insufficient upon which to predicate a finding that plaintiff is entitled to recover for any improvements alleged to have been made by plaintiff to the leased premises.
"9. That the evidence is insufficient to support defendant's position that due diligence was used in making repairs to the roof and in the performance of his covenant to keep the said roof sound and watertight.
"10. That the plaintiff is indebted to defendant for one-half the increase in taxes for 1957 over 1955 in the sum of $1,422.16, as provided in the lease."
The appellant presents four points, three of which urge the insufficiency of the evidence to support the final judgment; the fourth urges error upon the trial judge's refusal to grant defendant's motion to require plaintiff to elect upon which of the theories or counts it would proceed.
Appellant-landlord's first point is that the chancellor erred in finding a constructive eviction. It is pointed out that the motel remained in operation during the time that the lessee claimed it was unfit for occupancy. The record shows that the motel was never closed but always had guests occupying rooms. Viewed in the light most favorable to the judgment, the evidence indicates that the first complaint about the condition of the roof was made in March of 1957. The landlord attempted *687 repairs in several of the months of the summer and fall. In November, the landlord determined to replace the entire roof. Work was begun on November 30th or December 1st, and was in progress for a period of approximately four weeks. During all of this time some water was admitted into the motel, and because of exceptionally heavy rainfall large quantities of water were admitted during the last eight days of December and the 1st day of January. Because of this condition, the entire third floor was rendered uninhabitable; the walls were stained; a musty odor pervaded the motel and the air conditioning was not operative during the Christmas holiday period. In addition, water invaded the lobby and other public rooms of the motel. There is some evidence in the record that these conditions were occasioned by causes other than the faulty roof and the delayed repair thereof; but the trial judge found that by reason of the failure of the lessor to keep the roof sound and watertight, the leased premises in substantial part were rendered unuseable. There is an adequate basis for this finding.
The appellant urges that even after the judge arrived at this conclusion he should have held that the tenant was not entitled to claim a constructive eviction because the damages were not permanent in nature or sufficient to constitute a constructive eviction, and a different provision of the lease contained a waiver of the right to claim an eviction on this basis. We will briefly discuss each of these contentions.
Constructive eviction has been authoritatively defined in Florida in the case of Hankins v. Smith, 103 Fla. 892, 138 So. 494:
"A `constructive eviction' is an act which, although not amounting to an actual eviction, is done with the express or implied intention, and has the effect, of essentially interfering with the tenant's beneficial enjoyment of the leased premises. 36 C.J. 256, § 980. It may constitute a constructive eviction if the landlord does any wrongful act or is guilty of any default or neglect whereby the leased premises are rendered unsafe, unfit, or unsuitable for occupancy, in whole, or in substantial part, for the purposes for which they were leased. 36 C.J. 264 § 992."
In the light of this definition, we believe that the court correctly held the damages described were sufficient to constitute a constructive eviction. Appellant's contention that the damages were not sufficient for eviction because they were not permanent in character is not tenable. This is so because a holding that repairable damage is not sufficient to constitute constructive eviction would mean that there could be no such result for less than total destruction of the premises. It is true that the texts often use the word "permanent" in a definition of constructive eviction. See 3 Thompson on Real Property § 1132 at page 459, where the definition is as follows:
"* * * A constructive eviction of a tenant by the landlord is an intentional act or omission of the landlord, permanently depriving the tenant without his consent of the use and beneficial enjoyment of the demised premises, or any substantial part thereof, so that the tenant abandons the premises. Stillman v. Youmans [Tex.Civ. App.], 266 S.W.[2d] 913."
We take the meaning of "permanent" as used in this definition to be that the deprivation of use may not be of short duration. In the language of the Supreme Court of Florida, the damages must essentially interfere with the tenant's beneficial enjoyment. Applying this construction there is evidence in this record which, if believed by the trier of fact, was sufficient to sustain a finding that the damages alleged were neither transitory nor temporary and essentially interfered with the tenant's use of the property.
*688 The long and complicated lease prepared by the landlord contained the following subparagraph:
"The lessee will take the risk of any damage to the property of the lessee and of all persons claiming under, by or through the lessee that may occur by reason of water or bursting of any pipe, done or occasioned by or from the plumbing, gas, water system or other pipe or sewerage or the bursting, leaking or running of any cistern, tank, washstand, water closet or waste pipe, in or upon said building or premises or for damage occasioned by water being upon or coming through the roof, skylight, trap door or otherwise or from any damage occasioned by faulty city sewerage or city drainage or damage that may occur from any cause whatsoever; * * *."
This provision of the lease cannot be construed to destroy the effect of the requirement that the landlord keep the roof sound and watertight. In construing a lease, as in other contracts, it is necessary for the court to gather the meaning of the parties from the whole instrument and not from a few lines taken here and there. Lalow v. Codomo, Fla. 1958, 101 So.2d 390; Proser v. Berger, Fla.App. 1961, 132 So.2d 439. Further, it is the duty of the court where-ever possible to construe apparently conflicting provisions of a contract so that the provisions do not conflict. Triple E Development Co. v. Floridagold Citrus Corp. Fla. 1951, 51 So.2d 435, 438, 439; Transport Rental Systems, Inc. v. Hertz Corp., Fla.App. 1961, 129 So.2d 454. The last mentioned provision of the lease is properly construed as applying only to claims for damage to "property of the lessee".
Appellant's last point claims error because the trial court refused its motion to require the plaintiff-tenant to elect upon which of its claims it would proceed. Rule 1.8(g), Florida Rules of Civil Procedure, 30 F.S.A., provides:
"Joinder of Causes of Action; Consistency. A pleader may set up in the same action as many claims or causes of action or defenses in the same right as he has, and claims for relief may be stated in the alternative, if separate items make up the cause of action, or if two or more causes of action are joined. A party may also set forth two or more statements of a claim of defense alternatively, either in one count or defense, or in separate counts or defenses. When two or more statements are made in the alternative and one of them, if made independently, would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has, regardless of consistency, and whether a defense be based on legal or on equitable grounds, or on both. All pleadings shall be construed so as to do substantial justice."
Further, a wide discretion must be granted to the trial judge in determining whether the prosecution of the several claims in one action is prejudicial to the defendant. See 2 Moore, Federal Practice ¶ 8.32, at 1707-1708 [2d Ed. 1953].
This brings us to a consideration of the cross assignments. The trial court found the evidence insufficient to support a judgment in favor of the plaintiff for loss of profits. The plaintiff as cross appellant does not urge that it proved loss of profit, but contends rather that it should be allowed damages in the nature of a rebate upon the annual rent paid by it as lessee for each room which was rendered uninhabitable during the use period of some 4 months. The record will not sustain such a recovery for several reasons. We need only point out that the rent specified by the lease was an annual rent for the entire premises and not on a daily or room basis. It is well recognized that annual rent may not be apportioned, Thompson, *689 Real Property § 286 [2d Ed. 1939], nor may rent for an entire premises be apportioned upon a room basis.
The appellee also cross assigns as error the trial court's ruling that it was not entitled to recover for the unamortized value of the leasehold improvements. The record in this case does not afford a basis upon which the trial court could have determined what these improvements were, what was paid for them, or the proportion which was unused. Therefore, without passing upon the question of the recoverability of such damages in a situation such as the one before us, we hold that the trial judge correctly determined that damages for improvements made were not proved. It is well established that before damages may be awarded, there must be evidence authorizing or justifying the award of a definite amount. Florida Ventilated Awning Co. v. Dickson, Fla. 1953, 67 So.2d 215.
Affirmed.